**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BARBARA FERNANDEZ, on her own behalf, and on behalf of her infant children Z.F, E.F., and I.O., | Case No. 21-cv-680 |
| Plaintiffs, | **COMPLAINT** |
| -vs- | DEMAND FOR JURY TRIAL |
| THE CITY OF NEW YORK, NEW YORK CITY POLICE DEPARTMENT ("NYPD") OFFICER JEREMY LORENZORIVERA (Shield No. 13443), NYPD OFFICER JOHN DOES 1-10, ADMINSTRATION FOR CHILDREN'S SERVICES SUPERVISOR SHAWNEEQUA LUGO, and ADMINSTRATION FOR CHILDREN'S SERVICES JOHN DOES 1-10, | |
| Defendants. | |

Plaintiffs, by and through their undersigned attorney, alleges as follows:

## NATURE OF THE ACTION

1.   Plaintiffs brings this action for compensatory damages, punitive damages, and attorney's fees pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 for violation of their civil rights under 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments to the United States Constitution, as well as New York State law claims against all Defendants that are so related to the other counts that they form part of the same case.

## JURISDICTION

2.   The Court has jurisdiction over Plaintiffs' federal law claims under 28 U.S.C §§ 1331, 1343(a), (3), and (4), claims and supplemental jurisdiction over Plaintiffs' State claims under 28 U.S.C. § 1367(a).

**JURY TRIAL DEMANDED**

3.   Plaintiff demands trial by jury of all issues properly triable thereby.

**VENUE**

4.   Venue is proper for the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391(b) and (c).

**THE PARTIES**

5.    Plaintiff Barbara Fernandez is a United States citizen and resident of the City and State of New York, she is the mother and legal guardian of her minor children, Z.F. (born 2005, 13 years old at time of incident), E.F. (Born 2010, 9 years old at time of incident), and I.O. (born 2018, 5 months old at time of incident), who are infant plaintiffs in this present action.

6.   That at all times herein mentioned, Defendant CITY OF NEW YORK (hereinafter "CITY") was and is a municipal corporation, duly organized and existing under and by virtue of the laws of the State of New York.

7.   That at all times herein mentioned, Defendant CITY operated, controlled and maintained a police force known as the New York Police Department ("hereinafter "NYPD").

8.   That at all times herein mentioned, defendant Officer JEREMY LORENZORIVERA (hereinafter, "LORENZORIVERA") was and is an NYPD officer employed by defendant CITY.

9.   That at all times herein mentioned, Defendant LORENZORIVERA was acting within the course and scope of his employment with defendant CITY.

2

10. That at all times herein mentioned, Defendant LORENZORIVERA was acting under color of state law.

11. Defendant LORENZORIVERA is sued herein in both his individual and official capacities.

12. That at all times herein mentioned, currently unknown and unnamed officers (hereinafter, "OFFICER DOES") was and are NYPD officers and supervisors employed by defendant CITY.

13. That at all times herein mentioned, defendant OFFICER DOES were acting within the course and scope of their employment with defendant CITY.

14. That at all times herein mentioned, Defendant OFFICER DOES were acting under color of state law.

15. Defendant OFFICERS DOES are sued herein in both their individual and official capacities.

16. That at all times herein mentioned, defendant Administration of Children's Services ("ACS") Child Specialist Supervisor SHAWNEEQUA LUGO (hereinafter, "LUGO") was and is an ACS child specialist employed by defendant CITY.

17. That at all times herein mentioned, Defendant Lugo was acting within the course and scope of her employment with defendant CITY.

18. That at all times herein mentioned, Defendant LUGO was acting under color of state law.

19. Defendant LUGO is sued herein in both her individual and official capacities.

20.      That at all times herein mentioned, currently unknown and unnamed Administration of Children's Services unnamed workers (hereinafter, "ACS DOES") was and are ACS officers and supervisors employed by defendant CITY.

21.      That at all times herein mentioned, defendant ACS DOES were acting within the course and scope of their employment with defendant CITY.

22.      That at all times herein mentioned, Defendant ACS DOES were acting under color of state law.

23.      Defendant ACS DOES are sued herein in both their individual and official capacities.

24.      At all relevant times herein, the individual Defendants acted jointly and in concert with each other.

25.      Each individual defendant had the duty and the opportunity to protect Plaintiff from the unlawful actions of the other individual Defendants, but each individual defendant failed and refused to perform such duty, thereby proximately causing Plaintiff's injuries.

## **STATEMENT OF FACTS**

26.      On or about March 13, 2019, Plaintiff Ms. Fernandez was at her clean, well maintained, and safe home with her three children, infant Plaintiffs, in the Bronx NY when NYPD Officers LORENZORIVERA and NYPD DOE arrived at her door.

27.      Defendant Officers LORENZORIVERA and NYPD DOE did not announce why they came there, or what they had come to do.  They asked Plaintiff how her daughter, Z.F. was doing.  Ms. Fernandez, perplexed, answered that her daughter was fine and at home.

28.      Defendant Officers LORENZORIVERA and NYPD DOE requested to enter Plaintiff's home, which she permitted.

4

29.     Defendant Officers LORENZORIVERA and NYPD DOE walked around the home, and then asked to speak with Ms. Fernandez's children, Z.F. and E.F., which she allowed.

30.     The two infant Plaintiffs where questioned in private for approximately 10 minutes, without Plaintiff present, as she was not permitted by Defendant Officers to be present.

31.     Ms. Fernandez continued to ask Defendant Officers what they were doing in her home and why they had spoken to her minor children.

32.     Defendant Officers still did not inform Ms. Fernandez why they had come into her home and privately asked her children questions.  They just directed her to remain calm, and they would "get to the bottom of things".

33.     This private questioning of her children (including her disabled 9 year old son, E.F.) was causing Plaintiff a lot of anxiety, and she was crying profusely.  She wondered if something had happened to her kids, if they had witnessed anything dangerous at school, or if something else was going on.

34.     After speaking with the two children without their mother present, approximately ten or more NYPD OFFICER DOES arrived at her apartment.

35.     Plaintiff was told that Officers would remain in her home until Defendants ACS DOES arrived.

36.     After some time, two ACS workers, including Child Protective Specialist for the Administration of Children's Services, Shawneequa LUGO, arrived and also asked to speak with her children without her present, which she allowed.

37. At this point, Ms. Fernandez' kids were nervous and confused, as was Ms. Fernandez.

38. After ACS Defendants' conversations with the children the NYPD supervising officer DOE was called to the home.

39. Upon Supervising OFFICER DOE's arrival, he had a conversation with LUGO and ACS DOE 1.

40. Ms. Fernandez heard Defendants talking about how the house was clean, there was food in the house, and everything was in place.

41. Ms. Fernandez, again, pleaded the Defendants tell her what was going on.

42. She was again told to relax, and that they would get "to bottom of things"

43. Ms. Fernandez, who was feeling threatened and confused, then called her father to come to support her emotionally, and witness what was happening, and provide general support.

44. Mr. Fernandez's father arrived within 15 minutes, while Defendants were still in her home.

45. Ms. Fernandez, who had no outstanding warrants, and had not committed any crime, was then informed by ACS worker LUGO that she would be arrested and that her three children would be taken to the emergency room at St. Barnabas Hospital, but did not clarify the reason for her arrest or for the emergency room visit for her children, nor request her consent for that medical examination.

46. Ms. Fernandez's youngest child, I.O., was still an infant, and was taken from his mother's arms. Ms. Fernandez middle child, E.F. is disabled, and Ms. Fernandez was very

worried that his high needs would be properly met.  Futhermore, Ms. Fernandez's oldest child, Z.F., was a young tween, who needed her mother's supervision and care.

47.     Ms. Fernandez started to panic and thought she would have a nervous breakdown. She could not breathe and was confused, scared, and upset.

48.     Ms. Fernandez, visibly upset, but non-violent and composed, was assured by LUGO that ACS was taking the kids to the hospital and that if everything turned out ok, her kids would be returned to the home with her father, who would stay at the house while Ms. Fernandez was in custody.

49.     Over an hour after Defendants were in her home, as approximately 8:15PM, Ms. Fernandez was handcuffed, given a pat down search by a DOE male officer, despite Ms. Fernandez's objections, and transported to the 48th Precinct.

50.     Ms. Fernandez was at the precinct for approximately six hours.

51.     At the precinct, Ms. Fernandez was charged by officers with a FELONY crime, 120.05 Assault in the Second Degree, defined as: "A person is guilty of assault in the second degree when: With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person; or 2. With intent to cause physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument…".

52.     Ms. Fernandez learned that she was being charged with a felony assault, by use of a deadly weapon, for throwing a small mop to her 13 year old daughter, Z.F. to help her clean up the juice spilled by her 9 year old brother, as Z.F. was upset at her mom for taking away her phone as a result of Z.F. not completing her school project.

53.     It is outrageous that Ms. Fernandez, a loving mother heavily involved in her children's care, was arrested and charged with felony assault for doing what parents have been doing to their kids for ages, making them clean up and taking away their privileges.

54.     She worried how Z.F. a young teen, just learning about the world, and upset with her mother for taking her phone, may have been feeling as she had relayed the story about the mop and cleaning to her school counselor the day before, and maybe had not expected that it would lead to her mother being arrested and charged with a felony by Defendants, and the kids all being taken away due to felony criminal charges.

55.     Ms. Fernandez hoped that Z.F. would know that what she did was ok, and encouraged, but it was the actions of Defendants that had demonized Ms. Fernandez and had caused the family to be unlawfully separated and Ms. Fernandez unlawfully arrested.

56.     Plaintiff was told they can take her to a different hospital then the one her children were at (St. Barnabas) and so she was transported to Lincoln Hospital's emergency room, as per the Lincoln Hospital medical records she was handcuffed to the stretcher for her examination in police presence, and her legs were shackled.  Also, as per medical records, the accompanying Defendant Officer from the 48th precinct, Officer Gabrilla DeLeon, Shield Number 17984,  told staff that she was arrested "due to hitting her 17 year old daughter".

57.     At St. Barnabas Hospital the children were checked for bruises and signs of abuse.  No signs of any abuse were found and the children were all cleared.

58.     While Plaintiff was detained in the 48th Precinct, her children were transported into the Custody of Defendant City, and into foster care, despite the continuous eagerness of many family members to take custody of the children, including Defendant LUGO's

assurance that the children would be taken to her father who would be staying at the children's home in order to care for his grandchildren in their home.

59.     Futhermore, because of the arrest, and her being in police custody, such arrest was used as a reason to justify the unlawful taking away of Ms. Fernandez's kids into emergency ACS custody.  ACS records indicated that the children were removed as Ms. Fernandez was in police custody and under arrest. This- despite the fact that Ms. Fernandez should never have been arrested, that her arrest was unlawful, and also that Ms. Fernandez had several family members who were well qualified to have taken the children.

60.     On or about March 14, 2019, the District Attorney of Bronx County filed an affidavit in support of declining/deferring prosecution for the false charges against made against Plaintiff by Defendants.

61.     After her arrest in the presence of her children on March 13, 2019, Ms. Fernandez was detained by Defendants for a period of about 20 hours, until she was released at approximately 1:21PM on March 14, 2019.

62.     She immediately asked Defendant LORENZORIVERA, who was the Arresting Officer, and physically released her without any paperwork, where her children were.  She wanted to know if her kids were together, her five month old baby, who could not speak and was vulnerable, and her disabled 9 year old son, and her young 13 year old daughter.  Were they together, or were they separated?  How were they doing after watching their mother being arrested, and taken to hospital for an exam?

63.     Ms. Fernandez immediately attended an ACS family court hearing in the presence of her assigned Legal Aid attorney, Jacob Chin.

64.     Ms. Fernandez's family and friends, approximately 40 people, packed the family court to volunteer to take care of the children, and be witnesses to the great mother that she is and was, as well as to support the children and assure them things would be ok.

65.     Ms. Fernandez was shocked and upset to hear that ACS did not know where her children were.

66.     Outside the family court room, Plaintiff's sister, who is an NYPD officer with the 46th Precinct, spoke with ACS workers about taking custody of her niece and nephews, but ASC LUGO and ACS DOEs refused to conduct any further required background check so that would be possible.

67.     ACS worker LUGO negligently maintained that Ms. Fernandez's father could not take custody of the children because of past drug possession arrest.  This despite the fact that Ms. Fernandez's father had not ever been arrested for such, and even had he been arrested for such, such arrest without a conviction is not a grounds for refusing placement of the children in his care.  The next day, Ms. Fernandez obtained official copies of her father's records, including certificates of disposition to prove that he had not been arrested or convicted of such crime.  Despite such proof, the children were not released to Ms. Fernandez's father.

68.     ACS worker LUGO then informed Plaintiff that in order to see her children, she would have to first send an email to the foster care agency, and that it would have to be approved.

69.     Ms. Fernandez contacted the foster care agency where her children were being held, and was informed that was not true that she had to get approval by email. But, that she

only had 40 minutes to make it to midtown Manhattan from the Bronx.  Plaintiff and her family took two cars, and anxiously made it to the foster care facility before it closed.

70.     When Ms. Fernandez saw her kids, they were scared, had not slept, and were hungry and anxious.

71.     For the whole week, when the children were unlawfully, and without probable cause, at the foster care facility, the children were scared, were not able to check on their baby sister, and were traumatized from being away from their family who love and supports them.

72.     Ms. Fernandez's children remained in this Manhattan foster care facility, miles away from their home and mother, for approximately one week, despite the continuous willingness of numerous qualified family members to take custody of the children.

73.     Ms. Fernandez would drive to visit the kids each and every day.

74.     After another family court hearing, ACS finally performed a background check on Ms. Fernandez's cousin, Michelle Lopez, and approved her to take custody of the children. They remained with her cousin for almost three months, during which Ms. Fernandez visited them every day, and continued to provide essential services for them such as making sure they got to and from school safely, feeding them, and providing medication.

75.     Ms. Fernandez was informed directly by ACS that at the initial visit to St. Barnabas Hospital's emergency room the doctors found no evidence of mistreatment. Subsequent visits to the childrens' primary care doctor, Michelle Jindal, yielded the same results.

76.     After several months, Ms. Fernandez's children were returned to her custody, and the family court case was dismissed against Ms. Fernandez.

77.     While the children were in the foster care facility, and they were far from home and their school in the Bronx, they were waking up at 5:30 am, and taking the subway to school.  They were late for school several times, and missed school on two days.  While in their mom's care the children were not late for school, nor were there unexcused absences.

78.     At all times during the events described above, Defendants were engaged in a joint venture and formed an agreement to violate Plaintiff's rights. The individual defendant Officers and ACS workers assisted each other in performing the various actions described and lent their physical presence and support and the authority of their office to each other during said events. They failed to intervene in the obviously illegal actions of their fellow Officers and ACS workers against Plaintiff.

79.      The individual defendants acted intentionally, willfully, maliciously, with reckless disregard for and deliberate indifference to Plaintiff Ms. Fernandez's rights and physical and psychological well-being, as well as those of her infant children.

80.     On or about March 13, 2019, Defendants, their agents, servants and/or employees, intentionally placed Ms. Fernandez under arrest without just cause or provocation and with reckless and negligent disregard for the truth.

81.     As a result of the treatment of Plaintiff by the Defendants, Ms. Fernandez was denied liberty by being falsely arrested and imprisoned for approximately twenty hours.

82.     As a result of the treatment of Infant Plaintiff by the Defendants, Infant Plaintiffs were forced into New York City custody, denied the ability to be together and with their family, for a period of over one week, and then for a period of three months while they stayed about 20 minutes from their home, at Ms. Fernandez's cousin house.

83.     Additionally, and importantly, because of the unlawful arrest, and as a direct result of such illegal and unlawful arrest by Defendant LORENZORIVERA, and OFFICER DOES, ACS took custody of Ms. Fernandez's children, citing to Ms. Fernandez's arrest in ACS paperwork that children were "unable to stay with Ms. Fernandez due to her arrest."

84.     Ms. Fernandez and her children suffered emotional injuries due to the conduct of the Defendants and the ensuing prolonged separation from her children and each other.

85.     As a result of being falsely arrested in the presence of her children and detained for twenty hours, Plaintiff suffered humiliation, fear for her safety, her children's safety and other emotional distress.

86.     Her children suffered great trauma seeing their mother arrested in front of them, and their being taken into NYC custody.

87.      In fact, there was no evidence, and no reasonable basis to believe, that Plaintiff had at any time engaged in felony conduct against her children, or using any deadly weapon against them.

88.      There was no probable cause that Plaintiff had committed any of these crimes or any other offense.

89.     Upon information and belief, Defendants arrested and imprisoned Plaintiff despite knowing that there was no legal justification for doing so in order to justify their own actions, and cover up their joint decision with ACS to remove the children from the home, making it impossible for Ms. Fernandez to have custody of her children.

90.     Plaintiffs were injured.

91.      All Defendants agreed, cooperated, participated, and conspired with their co-Defendants herein to assist in and effectuate Plaintiff's unlawful arrest, malicious abuse of

13

process, and unlawful taking of Ms. Fernandez's children from her own custody, for crimes Officers knew that she did not commit, and in so doing deprived Plaintiff of her rights, privileges and immunities secured by the Constitution of the United States, including, but not limited to, her rights, and the Infant Plaintiff rights under the Fourth and Fourteenth Amendments to the U.S. Constitution to be free from unreasonable searches and seizures without due process of law.

92.    Defendants made these false allegations against Plaintiff with actual malice, and out of spite and ill will, and with retributive purpose.

93.    Defendants engaged in the above-described conduct intentionally and/or with deliberate indifference to Plaintiffs' constitutional and civil rights.

94.    All Defendants acted in concert to lodge these false allegations against Plaintiff and initiate a prosecution against her for offenses they knew she did not commit.

95.    Upon information and belief, Defendants arrested and imprisoned Plaintiff despite knowing that there was no legal justification for doing so in order to carry out some other objective, outside the scope of law enforcement.

96.    As a result of the foregoing, Plaintiffs sustained, *inter alia*, deprivation of their constitutional rights; loss of enjoyment of life; loss of liberty; loss of basic; fundamental human contact; loss of natural contact with her three children; loss of children's contact with their family; loss of natural contact with her family; loss of the natural family role played within the family as mother/child; physical injuries; personal injuries; emotional injuries; loss of income; loss of economic opportunity; pain and suffering; severe mental anguish, emotional distress, fear and lack of privacy, all necessitating psychiatric or therapeutic counseling, inadequate medical care; humiliation, indignities and embarrassment;

degradation; injury to reputation; restrictions on or total deprivations of all personal

freedoms; liberties and entitlements, including but not limited to diet, sleep, personal contact,

educational opportunity, vocational opportunity, athletic opportunity, hobbies, religious

fulfillment, personal fulfillment, family relations, marital relations, reading, movies, travel,

driving, enjoyment, and expression. Furthermore, as a direct result of Ms. Fernandez's unjust

imprisonment, and the unlawful taking of the children from her custody, many of the effects

of these disabilities and impairments continue to plague Plaintiffs to this day, and will

continue to plague Plaintiffs for the rest of their lives.

## FIRST CLAIM FOR RELIEF
### FALSE ARREST IN VIOLATION OF 42 U.S.C. § 1983 AND
### THE FOURTH AND FOURTEENTH AMENDMENTS OF THE CONSTITUTION

97.     The Plaintiff, Ms. Fernandez, incorporates by reference the allegations set forth

in all previous Paragraphs as if fully set forth herein.

98.     Plaintiff was subjected to an illegal, improper and false arrest by Defendants,

and taken into custody and caused to be falsely imprisoned, detained, and confined, without

any probable cause, privilege, or consent.

99.     As a direct and proximate result of the foregoing, Plaintiff was placed in

substantial and prolonged fear for her and her children's safety, her liberty was restricted for

an extended period of time, she was subjected to handcuffs and other physical restraints,

including shackled at the hospital, without probable cause or other lawful justification, in

violation of the Fourth and Fourteenth Amendments of the Constitution of the United States

and suffered and will continue to suffer injury and damages as a result, including, inter alia,

physical and mental pain and suffering, and mental anguish.

100.     In removing infant Plaintiff and detaining infant Plaintiff, defendants violated infant plaintiff's right to be free of unlawful searches and seizures, protected by the Fourth Amendment of the United States Constitution. As a result of all defendants' actions, adult plaintiff suffered the loss of the custody of her children, the invasion of the privacy of her home and family, and incurred expenses; infant plaintiffs suffered the loss of liberty and of the care and guidance of their mother; and all plaintiffs suffered humiliation, pain and suffering, terror, and mental anguish, all of which is ongoing.

## SECOND CLAIM FOR RELIEF
## MALICIOUS ABUSE OF PROCESS IN VIOLATION OF 42 U.S.C. § 1983

101.     The Plaintiff incorporates by reference the allegations set forth in all previous Paragraphs as if fully set forth herein.

102.     Defendants issued legal process to place Plaintiff under arrest.

103.     Defendants arrested Plaintiff in order to achieve a collateral objective of taking her children from her.

104.     Defendants acted with intent to do harm to Plaintiff without excuse or justification.

105.     As a direct and proximate result of the misconduct and abuse of authority described above, Plaintiff have suffered and will continue to suffer injury and damages, including, inter alia, physical and mental pain and suffering, and mental anguish.

## THIRD CLAIM FOR RELIEF
## FAILURE TO INTERVENE IN VIOLATION OF 42 U.S.C.§ 1983

106.     The Plaintiff incorporates by reference the allegations set forth in all previous Paragraphs as if fully set forth herein.

107.     Each and every individual defendant had an affirmative duty to intervene on Plaintiff's behalf to prevent the violation of her constitutional rights.

108.     The individual Defendants failed to intervene on Plaintiff's behalf to prevent the violation of her constitutional rights incurred by the unlawful arrest, despite having had a realistic opportunity to do so.

109.     As a result of the aforementioned conduct of the individual Defendants, Plaintiff's constitutional rights were violated.

110.     The Plaintiff incorporates by reference the allegations set forth in all previous Paragraphs as if fully set forth herein.

111.     Defendants agreed, cooperated, participated, and conspired to assist in and effectuate plaintiff's unlawful detention, arrest, imprisonment, and malicious prosecution for crimes she did not commit, and in so doing deprived plaintiff of her rights, privileges and immunities secured by the Constitution of the United States, including, but not limited to, her rights under the Fourth and Fourteenth Amendments to the U.S. Constitution to be free from unreasonable searches and seizures and to due process of law.

112.     As a direct and proximate result of the misconduct and abuse of authority described above, Plaintiff has suffered and will continue to suffer injury and damages, including, inter alia, physical and mental pain and suffering, and mental anguish.

**FOURTH CLAIM AGAINST ALL DEFENDANTS**
**CONSPIRACY IN VIOLATION OF §1985(3)**

113.     Plaintiff repeats and re-alleges each and every allegation set forth above as though fully set forth at length herein.

114.     Defendants agreed, cooperated, participated, and conspired to assist in and effectuate plaintiff's unlawful force, detention, arrest, imprisonment, and malicious

prosecution for crimes she did not commit, and in so doing deprived plaintiff of her rights, privileges and immunities secured by the Constitution of the United States, including, but not limited to, her rights under the Fourth and Fourteenth Amendments to the U.S. Constitution.

115.    Defendant Officers and ACS officers conspired with each other for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice. Here, the family court's decision on whether to emergency remove the children, and where to place them.

116.    None of these acts were in any way related to corporate policy or management decision, but were instead to further the criminal acts of Defendants.

117.    Defendants cooperated together and hid their actions, and were not only creating and assisting in such a situation, but were deliberately indifferent to the rights of the Plaintiff to a degree that shocks the conscience.

118.     Defendants' obstruction of justice, knowledge of obstruction, in addition to their deliberate indifference, caused Plaintiff's injuries.

## FIFTH CLAIM AGAINST ALL DEFENDANTS
### VIOLATION OF DUE PROCESS UNDER 42 U.S.C. § 1983

119.    Plaintiffs, Ms. Fernandez and her three Plaintiff children, Z.F., EF, and IO repeats and realleges each and every allegation set forth above as though fully set forth at length herein.

120.    By the conduct and actions described above, defendants while engaged in under the color of state law, conspired to interfere with and violate rights secured to Plaintiffs by the Constitution of the United States in violation of 42 U.S.C. § 1983, including, but not limited to, Plaintiffs' Fourth and Fourteenth Amendment rights.

121.    Defendants, through the actions alleged above, consciously disregarded known and excessive risks to Plaintiffs' liberty and welfare and engaged in a deliberate and unjustified effort to manufacture guilt against plaintiff in furtherance of a plan to secure and sustain a conviction against Ms. Fernandez at all costs.

122.    This included a course of conduct and pattern of behavior whereby defendants, inter alia, created and fabricated evidence to create the appearance of probable cause to believe that plaintiff had abused her children, intentionally and maliciously concealed material exculpatory evidence, suborned perjurious testimony, developed and cultivated witnesses to testify falsely, and unduly and improperly influenced the statements and testimony of witnesses through deceit and other means.

123.    Additionally, Plaintiffs more than four months apart from each other, initiated by the taking of the children while Ms. Fernandez was in unlawful police custody, without legitimate reason, violated Plaintiffs' Fourteenth Amendment right stay together as a family, without due process of law.

124.    Furthermore, the decision to not put the children into a family member's care but to take them into the custody of the CITY and send them to a foster facility in another borough, separated from each other, also violated Plaintiffs' 14th Amendment rights, and rights guaranteed to them by the NYS Constitution.

125.    Insofar as defendants are concerned, any determination on any of their parts that Plaintiff's children could not be in the custody of a family member, was such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that they actually did not base their decision on such a judgment

126.     Additionally, the extreme indignities, humiliation, and abuses that Plaintiff was forced to endure while waiting for custody of her children, for more than four months, including, without limitation, not being permitted to know where her children were, both individually and collectively state a violation of Plaintiff's due process rights.

127.     That such conduct by defendants deprived Plaintiffs of liberty and dignity and constituted both a substantive and procedural due process violation under the Fourteenth Amendment.

128.     Defendants' conduct precipitated and caused the sequence of events that ultimately resulted in the deprivation of Plaintiffs' liberties and dignities.

129.     Defendants' conduct in this regard was so egregious and outrageous as to shock the conscience.

**SIXTH CLAIM FOR RELIEF**
**SUPERVISORY LIABILITY FOR DEPRIVATION OF RIGHTS UNDER THE UNITED STATES CONSTITUTION AND 42 U.S.C. 1983**

130.     The Plaintiff incorporate by reference the allegations set forth in all previous Paragraphs as if fully set forth herein.

131.      By their conduct in failing to remedy the wrongs committed by employees of the THE CITY OF NEW YORK under their supervision; in failing to properly train, supervise, or discipline employees of the THE CITY OF NEW YORK under their supervision; and in directing employees under their supervision, Defendants, acting under the color of state law and in their individual and official capacities and within the scope of their employment, caused damage and injury in violation of Plaintiffs' rights guaranteed under 42 U.S.C. § 1983, and the United States Constitution, including its Amendments.

132.    As a result of the foregoing, Plaintiff was deprived of her liberty, suffered specific and serious bodily injury, pain and suffering, emotional distress and psychological injury, great humiliation, costs and expenses, and was otherwise damaged and injured.

**SEVENTH CLAIM FOR RELIEF**
**ASSAULT AND BATTERY UNDER THE NEW YORK CONSTITUTION**

133.    The plaintiff incorporates by reference the allegations set forth in all previous Paragraphs as if fully set forth herein.

134.    By the actions described above, defendants did inflict assault and battery upon the plaintiffs.  The acts and conduct of defendants were the direct and proximate cause of injury and damage to the Plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

135.    As a result of the foregoing, Plaintiff were deprived of their liberty and property, experienced pain and suffering, garden variety emotional injury, costs and expenses, and were otherwise damaged and injured.

**EIGHTH CLAIM FOR RELIEF**
**N.Y. STATE CONST. ART. I § 12 DUE PROCESS**

136.    The Plaintiffs incorporate by reference the allegations set forth in all previous Paragraphs as if fully set forth herein.

137.    Defendants deprived Plaintiffs of their rights, remedies, privileges, and immunities guaranteed to every citizen of the United States, in violation of 42 U.S.C. § 1983, including, but not limited to, rights guaranteed by Article I § 12 of the New York State Constitution.

138.    Defendants, their officers, agents, servants and employees, were responsible for Plaintiffs' injuries. Defendant City, as employer of the officer defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

139.    As a direct and proximate result of the misconduct and the abuse of authority detailed above, Plaintiffs sustained the damages described above.

## NINTH CLAIM FOR RELIEF
## FALSE ARREST AND FALSE IMPRISONMENT
## UNDER THE NEW YORK CONSTITUTION

140.    The Plaintiffs incorporate by reference the allegations set forth in all previous Paragraphs as if fully set forth herein.

141.    By the actions described above, defendants caused Plaintiff Barbara Fernandez to be falsely arrested and imprisoned, without reasonable or probable cause, illegally and without a warrant, and without any right or authority to do so.  The acts and conduct of the Defendants were the direct and proximate cause of injury and damage to the Plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

142.    As a result of the foregoing, Plaintiffs were deprived of their liberty and property, experienced pain and suffering, garden variety emotional injury, costs and expenses, and were otherwise damaged and injured.

## TENTH CLAIM FOR RELIEF
## TRESSPASS UNDER THE NEW YORK CONSTITUTION

143.    The Plaintiffs incorporates by reference the allegations set forth in all previous Paragraphs as if fully set forth herein.

144.    The Defendants willfully, wrongfully and unlawfully trespassed upon the person of plaintiffs.

145.    As a result of the foregoing, Plaintiffs were deprived of their liberty and property, experienced pain and suffering, garden variety emotional injury, costs and expenses, and was otherwise damaged and injured.

## ELEVENTH CLAIM FOR RELIEF
## INTENTIONAL AND NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS UNDER THE NEW YORK CONSTITUTION

146.     The Plaintiffs incorporates by reference the allegations set forth in all previous Paragraphs as if fully set forth herein.

147.     By the actions described above, Defendants engaged in extreme and outrageous conduct, conduct utterly intolerable in a civilized community, which intentionally and/or negligently caused severe emotional distress to Plaintiffs.  The acts and conduct of the Defendants were the direct and proximate cause of injury and damage to the Plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

148.     As a result of the foregoing, Plaintiffs were deprived of her liberty and property, experienced pain and suffering, garden variety emotional injury, costs and expenses, and were otherwise damaged and injured.

## TWELFTH CLAIM FOR RELIEF
## NEGLIGENCE UNDER THE NEW YORK CONSTITUTION

149.     The Plaintiffs incorporate by reference the allegations set forth in all previous Paragraphs as if fully set forth herein.

150.     The Defendants, jointly and severally, negligently caused injuries, emotional distress and damage to the Plaintiffs.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to the Plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

151.   As a result of the foregoing, Plaintiffs were deprived of their liberty and property, experienced pain and suffering, garden variety emotional injury, costs and expenses, and were otherwise damaged and injured.

## THIRTEENTH CLAIM FOR RELIEF
### NEGLIGENT HIRING, SCREENING, RETENTION, SUPERVISION AND TRAINING UNDER THE NEW YORK CONSTITUTION

152.   The plaintiffs incorporate by reference the allegations set forth in all previous Paragraphs as if fully set forth herein.

153.   Defendant CITY negligently hired, screened, retained, supervised and trained defendants.  The acts and conduct of the Defendants were the direct and proximate cause of injury and damage to the Plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

154.   As a result of the foregoing, Plaintiffs were deprived of their liberty and property, experienced pain and suffering, garden variety emotional injury, costs and expenses, and was otherwise damaged and injured.

## FOURTEENTH CLAIM FOR RELIEF
### CONSTITUTIONAL TORT

155.   Plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

156.   Defendants, acting under color of law, violated Plaintiffs' rights pursuant to Article I, §§ 6, 8, 9, 11 and 12 of the New York State Constitution.

157.   A damages remedy here is necessary to effectuate the purposes of §§ 6, 8, 9, 11 and 12 of the New York State Constitution, and appropriate to ensure full realization of Plaintiffs' rights under those sections.

158.     As a result of the foregoing, Plaintiffs were deprived of their liberty and property, right to familial interaction, experienced pain and suffering, garden variety emotional injury, costs and expenses, and was otherwise damaged and injured.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands the following relief jointly and severally against all the Defendants:

a.  Compensatory damages in an amount to be determined at trial;

b.  Punitive damages in an amount to be determined at trial;

c.  Attorney's fees pursuant to 42 U.S.C. § 1988;

d.  An award of Plaintiff's costs of suit;

e.  Pre-judgment and post-judgment interest;

f.  Such other relief as this Court deems just and proper.

Dated this 25st day of January, 2021

Respectfully Submitted,

_____/s/_____
P. Jenny Marashi (PM0916)
Marashi Legal
930 Grand Concourse, #1E
Bronx, NY 10451
(917) 703-1742
Marashi.legal@gmail.com
Attorney for Plaintiff