UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
BARBARA FERNANDEZ, n/k/a Barbie Ozuna,[1]  :
on her own behalf, and on behalf of her infant :
children Z.F., E.F., and I.O.,   :   21-CV-680 (OTW)
 :
          Plaintiffs,  :   **OPINION AND ORDER**
 :
          -against-  :
 :
THE CITY OF NEW YORK, NEW YORK CITY  :
POLICE DEPARTMENT ("NYPD") OFFICER  :
JEREMY LORENZO RIVERA (Shield No. 13443),  :
NPYD OFFICER JOHN DOES 1-10,  :
ADMINISTRATION FOR CHILDREN'S SERVICES  :
SUPERVISOR SHAWNEEQUA LUGO, and  :
ADMINISTRATION FOR CHILDREN'S SERVICES  :
JOHN DOES 1-10,  :
 :
          Defendants.
------------------------------------------------------------x

**ONA T. WANG**, **United States Magistrate Judge**:

**I.   INTRODUCTION**

Barbara Fernandez, now known as Barbie Ozuna ("Ms. Ozuna"), brought this civil rights action alleging violations of 42 U.S.C. § 1983, the Fourth, and the Fourteenth Amendment on her own behalf and on behalf of her then minor daughter, Zoe Ozuna,[2] and her minor children, E.O.,[3] and I.O. (collectively, "Plaintiffs"), against the City of New York, Officer Jeremy

---

[1] After filing this action, Ms. Ozuna changed her name from Barbara Fernandez to Barbie Ozuna. (ECF 131 at 1); (ECF 132 ¶ 21); (ECF 132-2).

[2] Now an adult, Zoe Ozuna was a minor at the time of the incidents alleged in the complaint and at the time Ms. Ozuna brought this action. After the filing of this action, Zoe Ozuna changed her name from Zoe Fernandez to Zoe Ozuna. (ECF 130 at 1-2).

[3] After filing this action, Ms. Ozuna's minor child also changed their name from E.F. to E.O. (ECF 131 at 1). I.O.'s name remains unchanged. (*Id.*).

LorenzoRivera, Officers John Doe 1-10, Shawneequa Lugo, and Administration for Children's Services John Does 1-10 (collectively, "Defendants") for emotional distress suffered by Plaintiffs in connection with the arrest of Ms. Ozuna; the removal of Ms. Ozuna's children from her custody; a full medical strip search of Ms. Ozuna's three minor children without parental consent; and the placement of Ms. Ozuna's children in foster care for 85 days, during which time Ms. Ozuna was only entitled to supervised visitation. (*See generally* ECF 2). Plaintiffs alleged, *inter alia*, that Defendants' unlawful arrest of Ms. Ozuna and the removal and placement into foster care of Ms. Ozuna's children caused their injuries. (*See generally* ECF 2).

Following a settlement conference before this Court on December 10, 2024, (*see* ECF 114), and several settlement calls, (*see* ECF Nos. 112, 113, 120), the parties reached an agreement to settle for a total award of $360,000, inclusive of attorneys' fees and costs. (ECF 132 ¶¶ 14-17). Under the proposed settlement, Ms. Ozuna will receive $30,000, Zoe Ozuna will receive $68,589.80 after fees and costs, and E.O. and I.O. will each receive $68,589.80 after fees and costs, totaling $137,179.60 for the infant plaintiffs. (ECF 132 ¶¶ 14-15). Counsel seeks to recover $120,000 of the net total settlement cost in fees. (ECF 132 ¶ 17).

After reviewing the proposed settlement and Plaintiffs' submissions in support (ECF Nos. 128-132), the Court concludes that the settlement is fair, reasonable, and in the best interests of E.O. and I.O. Accordingly, the motion to approve the infant compromise order is **GRANTED in part, with modifications as set forth below**.

## II. BACKGROUND

### A. Relevant Factual History

The Court assumes familiarity with the facts of this case and briefly summarizes here.

In 2019, Ms. Ozuna was at home with her three children in the Bronx, New York, when NYPD Officers LorenzoRivera and another officer arrived at the door. (ECF 2 ¶ 26). The officers asked about Ms. Ozuna's daughter, Zoe Ozuna, and asked to be let into the home, which Ms. Ozuna permitted. (ECF 2 ¶ 27-28). After questioning Ms. Ozuna's infant children, E.O. and I.O., in private, at least ten additional NYPD officers and two ACS workers arrived at her apartment. (ECF 2 ¶¶ 34, 36). Feeling threatened, Ms. Ozuna called her father to come support her and her children, and he arrived at the home within 15 minutes. (ECF 2 ¶¶ 43-44). Ms. Ozuna was then informed by ACS worker Lugo that she was under arrest and that her children would be taken to St. Barnabas Hospital. (ECF 2 ¶ 45). Lugo did not explain why Ms. Ozuna was being arrested or why her children were being taken to the hospital, nor did Lugo request Ms. Ozuna's consent for subsequent medical examinations of her children. (ECF 2 ¶ 45).

While Ms. Ozuna was detained at the 48th Precinct, her children were transported into foster care notwithstanding the availability and willingness of various family members to take custody of the children. (ECF 2 ¶ 58). Ms. Ozuna was detained for approximately 20 hours before she was released on March 14, 2019. (ECF 2 ¶ 61). Ms. Ozuna then attended an ACS family court hearing, along with nearly 40 family and friends as witnesses, where she learned that ACS did not know where her children were. (ECF 2 ¶¶ 63-65). Ms. Ozuna's three children were held at the foster care facility for one week. (ECF 2 ¶¶ 71-72). Thereafter, the children were released into the custody of Ms. Ozuna's cousin, Michelle Lopez, where they remained for three months. (ECF 2 ¶ 74). Ms. Ozuna was also informed that the doctors at St. Barnabas Hospital found no evidence of mistreatment. (ECF 2 ¶ 75). The children were then released into Ms. Ozuna's custody and the family court case against her was dismissed. (ECF 2 ¶ 76).

**B. Procedural History**

On January 26, 2021, Ms. Ozuna filed this action on behalf of herself, Zoe Ozuna, E.O., and I.O. (ECF Nos. 1, 2). Between filing the complaint in 2021 and beginning settlement negotiations in June 2024, the parties conducted extensive discovery. (*See generally* Docket). This case was referred to me for General Pretrial Management on May 6, 2021. (ECF 10). The parties had an initial pre-settlement conference call on April 26, 2022. (ECF 33). After two years of litigation, the parties requested another settlement conference. (ECF 104). The Court held pre-settlement conference calls on June 26, 2024, (ECF 105), August 14, 2024, (ECF 106), October 1, 2024, (ECF 110), and October 31, 2024, (ECF 113). The parties then attended a remote settlement conference before me on December 10, 2024. (ECF 114, 117). After two final pre-settlement conference calls on January 30, 2025, and February 13, 2025, (ECF Nos. 119, 120), the parties reached a settlement in principle and Judge Clarke entered an order of dismissal. (ECF Nos. 121, 122). On March 26, 2025, the parties notified the Court that they intended to submit an infant compromise order for Court approval. (ECF 122). On April 4, 2025, the parties consented to my jurisdiction for all purposes. (ECF Nos. 124, 125).

On April 14, 2025, Plaintiffs submitted a proposed infant compromise order for the Court's approval. (ECF 128). Defendant has not opposed Plaintiffs' proposed order. (*See generally* Docket). In support of their application,[4] Plaintiffs submitted: (1) a proposed order, (ECF 128); (2) a cover letter, (ECF 129); (3) an affidavit from Zoe Ozuna, (ECF 130); (4) an

---

[4] New York Civil Practice Rule 1208 requires that the parties submit certain materials in support of an application for an infant compromise order, including: (1) an affidavit from the infant's representative, explaining the nature of the claims and injuries and stating their approval of the proposed settlement (N.Y. C.P.L.R. § 1208(a)); and (2) an affidavit from the infant's attorney, explaining why they recommend the settlement (N.Y. C.P.L.R. § 1208(b)). Plaintiffs here have submitted both required items. (*See* ECF Nos. 129-132).

affidavit from Ms. Ozuna, (ECF 131); (5) a declaration from counsel, (ECF 132); (6) records of costs incurred during the litigation, (ECF 132-1); (7) a copy of the notice of name change for Ms. Ozuna and Zoe Ozuna, (ECF 132-2); (8) a proposed stipulation and order of dismissal, which contains a copy of the parties' proposed settlement agreement, (ECF 134); and (9) attorney billing records for Plaintiffs' counsel, Poupa Jenny Marashi ("Marashi"), (ECF 135).

### C. The Proposed Infant Compromise Order

After the December 10 Settlement Conference and January 30 and February 13 Settlement Calls, the parties agreed in principle to settle the case for a total out of pocket cash settlement of $360,000 (the "Total Settlement Cost). Ms. Ozuna accepted the offer on behalf of herself, Zoe Ozuna, and E.O. and I.O. Plaintiffs provide a breakdown of the settlement at ECF 132.

Under the proposed infant compromise order, $30,000 of the Total Settlement Cost is designated for Ms. Ozuna, $110,000 is designated for Zoe Ozuna, $110,000 is designated for E.O., and $110,000 is designated for I.O. (ECF 132 ¶ 14). Two sums are to be deducted from Zoe Ozuna, E.O. and I.O.'s respective shares of the Total Settlement Cost: (1) their proportionate share of attorneys' fees, which total $120,000—$40,000 each for Zoe Ozuna, E.O., and I.O.; and (2) their proportionate share of costs associated with this action, which total $4,231.10—$1,410.37 each for Zoe Ozuna, E.O. and I.O. (ECF 132 ¶ 14). No fees or costs are to be deduced from Ms. Ozuna's respective share of the Total Settlement Cost. (ECF 132 ¶ 14).

Counsel here requests attorneys' fees totaling $120,000. (ECF 132 ¶ 17). Counsel's request represents 33% of the Total Settlement Cost of $360,000 based on a contingency fee arrangement between Marashi Legal and Ms. Ozuna. (ECF 132 ¶ 17).

The total settlement award to Plaintiffs under the proposed infant compromise is summarized here:

| Total Settlement Cost | $360,000 |
|---|---|
| Settlement Cost to Ms. Ozuna | $30,000 |
| Settlement Cost to Zoe Ozuna | $68,589.80 |
| Settlement Cost to E.O. | $68,589.80 |
| Settlement Cost to I.O. | $68,589.80 |
| **Total Settlement Award** | **$235,769.40[5]** |

III. **DISCUSSION**

In the Southern District of New York, settlement or termination of any action "by or on behalf of an infant" must be first approved by a court. *See* S.D.N.Y. Local Civil R. 83.2(a)(1). In determining whether an infant compromise should be approved, the reviewing court "shall conform as nearly as may be, to the New York State statutes and rules," (Local Civil R. 83.2(a)(1)), although the Local Rules do not impose "rigid" procedural obligations on federal district courts. *See D.J. ex rel. Roberts v. City of New York*, 11-CV-5458 (JGK) (DF), 2012 WL 5431034, at *2 (S.D.N.Y. Oct. 16, 2012), *rep. and rec. adopted sub nom. Roberts v. City of New York*, 11-CV-5458 (JGK), 2012 WL 5429521 (S.D.N.Y. 2012) (citing *Neilson v. Colgate–Palmolive Co.,* 199 F.3d 642, 655 (2d Cir. 1999)). In accordance with the applicable New York statutes and rules, courts in this district must determine: (1) whether the best interests of the infant are protected by the terms and conditions of the proposed settlement; and (2) whether the proposed settlement, including any legal fees and expenses to be paid, as part of the proposal, are fair and reasonable. *Martegani v. Cirrus Design Corp.*, 687 F. Supp. 2d 373, 377 (S.D.N.Y.

---

[5] Because Plaintiffs' counsel incorrectly calculated attorneys' fees in her submission, the settlement cost to Zoe Ozuna, E.O., and I.O., and the Total Settlement Award are recalculated by the Court below. *See infra* Section III.B.1.–III.B.3.

6

2010). In so doing, the court must reach an "an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated," and "form an educated estimate of the complexity, expense, and likely duration of such litigation [] and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise." *Newman v. Stein*, 464 F.2d 689, 692 (2d Cir. 1972) (collecting cases) (internal quotation marks omitted), *cert. denied,* 409 U.S. 1039 (1972).

### A. The Settlement Is Fair, Reasonable, and in E.O. and I.O.'s Best Interests

Ultimately, the purpose of the infant compromise proceeding is to ensure that the proposed settlement is "fair and reasonable and in the infant plaintiff's best interests." *Martegani*, 687 F. Supp. 2d at 377 (quoting *Edionwe v. Hussain*, 777 N.Y.S. 2d 520, 522 (2d Dep't 2004). There is no bright-line test to make this determination. *Campbell v. City of New York*, 15-CV-2088 (PAE), 2015 WL 7019831, at *2 (S.D.N.Y. 2015). *See also Newman*, 464 F.2d at 692 (2d Cir. 1972) (explaining that the multifactorial analysis regarding "the propriety of [] settlement . . . is a "delicate one").

There is "a strong presumption that a settlement is fair and reasonable" where: (1) the parties reached settlement after arm's length negotiation; (2) counsel is experienced in similar cases; and (3) there has been "sufficient discovery to enable counsel to act intelligently." *I.M. by Hartmann v. DiCostanzo*, 16-CV-07608 (LJL), 2020 WL 1330241, at *3 (S.D.N.Y. 2020) (citing *Campbell*, 2015 WL 7019831, at *2 (collecting cases)). *See also T.H. v. New York City Dep't of Educ.*, 99 F. Supp. 3d 394, 397 (S.D.N.Y. 2015). The Court may also consider the complexity, expense, and likely duration of litigation, and "the risks of establishing both liability and damages." *D.J. ex rel. Roberts,* 2012 WL 5431034, at *3 (citing *City of Detroit v. Grinned Corp.,*

7

495 F.2d 448, 463 (2d Cir. 1974)). "Finally, courts afford significant deference to a guardian's view that the settlement reached is fair and reasonable to the infant." *Campbell*, 2015 WL 7019831, at *2 (collecting cases).

The Court finds that the terms of the proposed infant compromise order are fair, reasonable, and in E.O. and I.O.'s best interests in accordance with the standards in this district. First, there is no evidence of collusion in this case; rather, the settlement was reached after arm's length negotiation, much of which took place before this Court. (*See* ECF Nos. 33, 104, 105, 106, 110, 113, 114, 117, 119, 120). Second, the parties have conducted extensive discovery over the course of two years, (*see generally* Docket), which have plainly enabled counsel to act in an informed and intelligent manner with respect to settlement negotiations.

Furthermore, the Court finds that the terms of the compromise are adequate in light of the complexity, risks, expenses, duration, and likely rewards of litigation. *See D.J. ex rel. Roberts,* 2012 WL 5431034, at *3. Here, there is not insignificant risk for Plaintiffs in proceeding to trial because Section 1983 claims require a finding of "deliberate indifference" as opposed to mere negligence, and such cases can "rarely be predicted with certainty." *Orlander v. McKnight*, 12-CV-4745 (HBP), 2013 WL 4400537, at *5 (S.D.N.Y. Aug. 15, 2013). Proceeding to trial also poses a particular risk to Ms. Ozuna's minor children, as "[t]estifying at a trial and facing the rigors of cross-examination is a difficult and often unpleasant experience for many witnesses," and this potential trauma is one best not to unnecessarily hoist upon young children such as E.O. and I.O. *Id.* ("[G]iven the Infants' tender ages, the experience [of cross-examination] is still one that most youngsters rae better off avoiding."). Finally, the Court gives substantial

deference to Ms. Ozuna's affidavit attesting to her understanding of these risks, and her belief that this settlement is what is best for her children. (ECF 131).

Based on the foregoing, the Court finds the settlement is fair, reasonable, and in the best interests of the E.O. and I.O.

**B. The Requested Attorneys' Fees and Costs Are Reasonable**

*1. Attorney's Fees*

As an initial matter, Marashi has incorrectly calculated the one-third fee she seeks by basing it on the gross settlement amount of $360,000 rather than the net amount, after costs. *See D.J. ex rel. Roberts,* 2012 WL 5431034, at *6. For the reasons explained below, the Court finds that Marashi has properly documented $4,231.10 in costs, which would leave a net settlement amount of $355,768.90, making Marashi's claimed one-third share $118,589.63.

Under New York Judiciary Law § 474, where a party requests attorneys' fees as part of an infant compromise proceeding, the court must determine whether the fees are "suitable compensation for the attorney for his service" on the infant's behalf. *Campbell*, 2015 WL 7019831, at *4 (quoting *Allstate Ins. Co. v. Williams,* 04-CV-4575 (CLP), 2006 WL 2711538, at *4 (E.D.N.Y. 2006) (citation cleaned up)). "[T]he Court has an independent obligation to scrutinize the appropriateness of counsel's requested compensation, so as to protect the interests of the infant." *D.J. ex rel. Roberts,* 2012 WL 5431034, at *3 (citing Local Civil R. 83.2(a)(2)).

Courts treat contingency-fee agreements as "advisory only," and the court's analysis begins with the "lodestar calculation." *Campbell*, 2015 WL 7019831, at *4 (citing *White v. DaimlerChrysler Corp.,* 871 N.Y.S. 2d 170, 173 (2d Dep't 2008); *D.J. ex rel. Roberts,* 2012 WL 5431034, at *6 (citing *Millea v. Metro-N. R. Co.,* 658 F.3d 154, 166 (2d Cir. 2011))). Courts

9

commonly use the lodestar method to create a "presumptively reasonable fee," by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. *Millea v. Metro-N. R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (citing *Arbor Hill Concerned Citizens Neighborhood Assoc. v. Cnty. of Albany,* 522 F.3d 182, 183 (2d Cir. 2008)). "Once that initial computation has been made, the district court may, in its discretion, increase the lodestar by applying a multiplier based on other less objective factors such as the risk of litigation and the performance of the attorneys." *McDaniel v. Cnty. of Schenectady*, 595 F.3d 411, 414 (2d Cir. 2010) (citing *Marriott v. Cnty. of Montgomery*, 426 F. Supp. 2d 1, 9 (N.D.N.Y. 2006)).

Here, Plaintiffs' counsel requests $118,589.63 in attorneys' fees. (ECF 132 ¶ 17). Counsel's request represents 33% of the Total Settlement Cost of $360,000 minus $4,231.10 in costs under a contingency fee arrangement they entered with Ms. Ozuna. (ECF 132 ¶ 17). The Court finds this award reasonable and appropriate.

First, while the contingency-fee arrangement is only advisory, similar awards of one-third of the plaintiff's recovery are common in civil rights actions in this district. *See, e.g.*, *Orlander*, 2013 WL 4400537, at *8; *Rodney v. City of New York*, 13-CV-6179 (RRM) (VMS), 2015 WL 1014165, at *6 (E.D.N.Y. Mar. 6, 2015) (collecting cases). Second, the proposed fee award here is lower than an award of the lodestar, calculated by multiplying Marashi's hours worked by her hourly rate. In her submission to the Court, Marashi's invoice indicates that she spent 575 hours of work on this case, for which she bills at a rate of $650 per hour. Application of an hourly rate of $650 per hour for Marashi's legal work yields a total of $373,750 in attorneys'

fees. Marashi thus seeks significantly less than her purported lodestar.[6] *See Campbell*, 2015 WL 7019831, at *5. Marashi also spent significant time representing Plaintiffs throughout discovery and settlement negotiations. (*See generally* Docket).

Accordingly, the Court finds that the $118,589.63 fee award is "suitable compensation" for Marashi's work on behalf of Plaintiffs.

### 2. Costs

A party's request for costs is generally governed by Local Civil Rule 54.1. Marashi provided documentation of costs, consisting primarily of deposition and transcript fees, process server expenses, and the court filing fee. Marashi seeks $4,231.10 for these costs. Because Marashi submitted sufficient documentary evidence in support of her request, I find that $4,231.10 in costs awarded from the gross settlement amount is appropriate.

### 3. Recalculation of Awards

In light of the analysis above, the Court recalculates the settlement awards to Zoe Ozuna, E.O., and I.O. Of the Total Settlement Award of $360,000, $4,231.10 is deducted for costs and divided evenly between Zoe Ozuna, E.O., and I.O. for $1,410.37 each. Of the remaining $358,589.63, $118,589.63 (33%) is deducted as reasonable attorney's fees and divided evenly between Zoe Ozuna, E.O., and I.O. for $39,529.88 each. Barbie Ozuna receives

---

[6] The $650 hourly rate that Marashi claims is on the cusp of the $250-600 range that courts in this district have held as reasonable when approving fee awards in other civil rights lawsuits. *See DeCurtis v. Upward Bound Int'l, Inc.*, 09-CV-5378, 2011 WL 4549412, at *8 (S.D.N.Y. Sept. 27, 2011) ("[R]ates awarded to experienced civil rights attorneys over the past ten years have ranged from $250 to $600, … with average awards increasing over time."). Marashi attests that she spent 575 hours working on this case, which the Court finds reasonable given Marashi's work on this case started in 2019. (*See* ECF Nos. 132, 135). Even applying an hourly rate of $250, the lowest end of the range courts in this district have applied for experienced civil rights attorneys, Marashi's work would have earned her a total of $143,750. Marashi thus seeks less than her lodestar by even the most modest measure. *See Bland v. City of New York*, 14-CV-5398 (AT) (DCF), 2016 WL 3443584, at *5 (S.D.N.Y. June 1, 2016).

$30,000. The remaining $207,179.27 is divided evenly between Zoe Ozuna, E.O., and I.O. for $69,059.76 each.

The renewed total settlement award to Plaintiffs under the proposed infant compromise order is summarized here:

| Total Settlement Cost | **$360,000** |
|---|---|
| Costs to Marashi | $4,231.10 |
| Attorneys' Fees to Marashi | $118,589.63 |
| Settlement Cost to Ms. Ozuna | $30,000 |
| Settlement Cost to Zoe Ozuna | $69,059.76 |
| Settlement Cost to E.O. | $69,059.76 |
| Settlement Cost to I.O. | $69,059.76 |
| **Total Settlement Award** | **$237,179.28** |

IV. **CONCLUSION**

Based on its review, the Court finds the proposed settlement of the claims by Plaintiffs, in the amount of $360,000, fair, reasonable, and proper, and approves the infant compromise order**.** In addition, the Court **GRANTS** Marashi's request for attorneys' fees in the amount of $118,589.63, plus costs in the amount of $4,231.10.

**SO ORDERED.**

Dated: April 29, 2025  
New York, New York

*s/Ona T. Wang*  
**Ona T. Wang**  
United States Magistrate Judge